```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/7/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
DEUTSCH INC.,

                Plaintiff,

-against-

THE SHERWIN-WILLIAMS COMPANY,

                Defendant.
-------------------------------------------------------------

19 Civ. 2743 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Defendant, the Sherwin-Williams Company ("Sherwin-Williams"), was a longtime client of Plaintiff, Deutsch Inc. (the "Agency"), an advertising firm. Compl. ¶¶ 2, ECF No. 1. They entered into a written agreement that structured their relationship and set out the method by which Defendant would request services from, and provide compensation to, Plaintiff. *Id.* ¶¶ 8–9. In January 2018, Defendant ceased requesting services from Plaintiff, and ceased paying it, but did not avail itself of the termination procedures set out in the agreement. *Id.* ¶ 21. Plaintiff claims that this was a breach of the parties' contract, asserting that Defendant could only stop operating under the terms of the agreement by initiating a formal termination, and that the agreement required Defendant to continue paying fees until the agreement was formally terminated. *Id.* ¶ 26. Now before the Court is Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim. ECF No. 31. For the reasons stated below, the Court concludes that Defendant's actions did not violate the unambiguous terms of the contract, and, therefore, Defendant's motion is GRANTED.

## BACKGROUND

The following facts are taken from the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

I.   The Agreement

On November 7, 2014, Plaintiff and Defendant entered into an Agency Services Agreement (the "Agreement"). Compl. ¶ 8; *see* Agreement, ECF No. 35-1. The purpose of the Agreement was for Defendant to hire Plaintiff to create and manage marketing plans and advertising for several of Defendant's product lines. Compl. ¶ 9. That purpose is reflected in the Agreement's Whereas clause (the "Whereas Clause"), which states:

> WHEREAS, Agency and Sherwin-Willaims desire to enter into an agreement under which Agency would be retained by Sherwin-Williams for the purpose of completing certain services ("**Services**") described on the Statement of Work attached hereto as Exhibit A and various other Statements of Work attached to this Agreement as additional Exhibit A['s] as may be mutually agreed to by the parties from time to time . . . pursuant to the terms and conditions set forth herein. Agency shall use its good faith efforts to enter into Statements of Work.

Agreement at 1.

The Agreement structures Plaintiff's and Defendant's relationship. Among other provisions, it: gives Defendant the right to review the employees working on its account and requires a particular executive to play an integral role, *id.* ¶ 1; sets out rules for the control of property and information relevant to the work Plaintiff would be performing, *id.* ¶ 2(c); describes the manner in which Plaintiff could act as an agent for Defendant, *id.* ¶ 5; allocates the ownership of Plaintiff's work product, *id.* ¶ 6; requires confidentiality for sensitive information, *id.* ¶ 7; requires the parties to indemnify each other in certain circumstances, *id.* ¶ 9; limits the situations in which Plaintiff can use Defendant's name to promote Plaintiff's own work, *id.* ¶ 15;

and requires Plaintiff to refrain from acting as a marketing or advertising agency for entities and brands that compete with Defendant, *id.* ¶ 16.

The Agreement does not describe particular work that Plaintiff will perform for Defendant, but sets forth a process by which Plaintiff and Defendant will agree on specific projects. As the Whereas Clause explains, Plaintiff will perform services described in "Statements of Work," separate agreements "mutually agreed to by the parties from time to time . . . pursuant to the terms and conditions set forth herein." The defined term "Services" refers to the services described in those Statements of Work. The Agreement provides that "[a]s full compensation for the Services, Agency shall receive the Fee . . . set forth on the applicable Statement of Work, payable as set forth on the applicable Statement of Work." *Id.* ¶ 3(a). "Fee," too, is a defined term. The Agreement states, "Sherwin-Williams will pay Agency a fee specified on Statements of Work (the '**Fee**'), which will be billed and earned monthly in equal installments unless otherwise agreed in a Statement of Work (the '**Monthly Fee**')." *Id.* ¶ 3(c). The Agreement further provides that "Prior to the end of each contract year of the Term," (defined as the life of the agreement, *see id.* ¶ 2(a)), "Sherwin-Williams and Agency will review Agency's compensation to make certain it is consistent with the service requirements of the account for the following contract year, provided, however, that the Monthly Fee will continue to be billed by Agency and paid by Sherwin-Williams until different compensation terms are agreed upon in writing between the parties." *Id.* ¶ 3(c).

The Agreement also provides the terms on which either party could terminate their responsibilities. There are two ways in which the parties could terminate the Agreement as a whole. First, it could be terminated

> by either party for any or no reason at any time upon ninety (90) days' written notice to the other (the "**Notice Period**"), provided, however that all rights and

3

> responsibilities of the parties shall continue during the Notice Period, including the provision of Services by Agency and Sherwin-Williams' payment to Agency of the Monthly Fee, as defined below, applicable during the notice period.

*Id.* ¶ 2(a) (the "Termination Clause"). Second, it could be terminated on 30 days' written notice "by either party upon the failure of the other party to comply with any of the material terms or conditions contained in [the] Agreement." *Id.* In addition, Defendant had the right to terminate individual Statements of Work "in whole or in part, for any reason or no reason at any time upon sixty (60) days' written notice to Agency, provided, however, that Sherwin-Williams shall pay Agency the Monthly Fee under the Statement of Work until sixty (60) days after the date of such written notice." *Id.*

## II. The Alleged Breach

Between 2014 and 2017, the parties entered into five Statements of Work. Compl. ¶ 14. The last of those Statements of Work ran from January 1, 2017, to December 31, 2017. *Id.* ¶¶ 17–18; *see* 2017 Statement, ECF No 35-2 at 16. It provides that in return for services outlined in separate documents, Defendant will pay Plaintiff $9,781,858. 2017 Statement. And it states that "[t]he fee for Services will be earned monthly for services provided and invoiced in 12 equal monthly payments of $815,154.84." *Id.*; Compl. ¶ 17. In December 2017, Plaintiff reminded Defendant that 90 days' notice was required before termination of the Agreement, and informed Defendant "that it would continue billing the Monthly Fees until the Agreement was terminated." Compl. ¶ 20. In January 2018, Defendant stopped paying Plaintiff, and declined to negotiate a new Statement of Work. *Id.* ¶ 21. Defendant did not, however, invoke the termination procedure set out in paragraph 2(a) of the Agreement. *Id.*

On March 27, 2019, Plaintiff filed this action, claiming that "by failing to provide written notice of termination and failing to pay [Plaintiff] the Monthly Fee during the 90-day notice

4

period following termination of the Agreement," Defendant breached the Agreement. *Id.* ¶ 26. Plaintiff claims that Defendant owes it three months of Monthly Fees as delineated in the 2017 Statement of Work, for a total of $2,445,464.52. *Id.* ¶ 23. On July 2, 2019, Defendant moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 31.

## ANALYSIS

I. <u>Legal Standards</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon in bringing suit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

"Under Ohio law, the elements for breach of contract are: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." *MMK Grp., LLC v. SheShells Co., LLC*, 591 F. Supp. 2d 944, 963 (N.D. Ohio 2008). "Under Ohio law, the 'construction of a written contract is a matter of law' and the

Court's 'primary role is to ascertain and give effect to the intent of the parties.'" *JODA, LLC v. Aviation Servs. Int'l, LLC*, No. 06 Civ. 3043, 2009 WL 3122570, at *5 (S.D.N.Y. Sept. 29, 2009) (quoting *Saunders v. Mortensen,* 801 N.E.2d 452, 454 (Ohio 2004)). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *City of St. Marys v. Auglaize Cty. Bd. of Comm'rs,* 875 N.E.2d 561, 566 (Ohio 2007)).

II. Application

Applying the unambiguous terms of the Agreement in this case, Defendant is not liable for breach of contract.[1] The Agreement does not obligate Defendant to continue paying a prior Statement of Work's Monthly Fee once that Statement's term expires. Nor does it require Defendant to enter into a new Statement of Work immediately upon the expiration of the previous one, such that failure to enter into a new Statement of Work would constitute an impermissible termination of the Agreement.

The Agreement is unequivocal with respect to Defendant's obligation to make payments to Plaintiff. It defines "Services" as whatever services are laid out in the Statement of Work entered into by the parties. *See* Whereas Clause. It defines the term "Fee" as meaning "a fee specified on Statements of Work." Agreement ¶ 3(c). And it provides that "[a]s *full* compensation for the Services, Agency shall receive the Fee . . . set forth on the applicable Statement of Work, payable as set forth on the applicable Statement of Work." *Id.* ¶ 3(a)

---

[1] Because the Court concludes that the contract is unambiguous, it will not consider Plaintiff's argument that extrinsic evidence supports its reading of the contract. Pl. Opp. at 8–9, ECF No. 36. Under Ohio law, "extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Savedoff*, 524 F.3d at 763 (quoting *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996)). However, "[c]ontractual language is ambiguous 'only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.'" *Id.* (quoting *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio Ct. App. 2003)).

(emphasis added). Those provisions leave no room for payments from Defendant to Plaintiff in amounts beyond what is described on the Statements of Work.

Plaintiff argues that, even if Defendant might ordinarily not be required to continue to pay any amount beyond the total Fee specified in applicable Statements of Work, the Agreement does require continued payment of the Monthly Fee specified in an expiring Statement of Work when no new Statement has been negotiated. But the provisions Plaintiff relies on do not support that interpretation. Plaintiff points to the provision in paragraph 3(c) that provides, "Prior to the end of each contract year of the Term, Sherwin-Williams and Agency will review Agency's compensation to make certain it is consistent with the service requirements of the account for the following contract year; *provided, however, that the Monthly Fee will continue to be billed by Agency and paid by Sherwin-Williams until different compensation terms are agreed upon in writing between the parties*." Agreement ¶ 3(c) (emphasis added); Pl. Opp at 11–12. But that provision says nothing about payments when no Statement of Work is in effect. To the contrary, it provides that the "Monthly Fee" will continue to be paid. Earlier in the same paragraph, the Monthly Fee is defined as nothing more than the Fee set out in a Statement of Work, "billed and earned monthly in equal installments." In other words, the Monthly Fee amounts to a fraction of the total Fee; the term has no meaning if no Fee is owed. The provision cited by Plaintiff requires the parties to review at the end of each contract year the services Plaintiff is providing and the compensation Defendant is paying, and requires Defendant to continue paying the applicable fees during that process, when one or more Statements of Work are ongoing. If, for example, the parties entered into a Statement of Work that spanned multiple years, or entered into a Statement of Work midway through a contract year, they might wish to reassess the terms of that Statement at the end of a contract year; Paragraph 3(c) establishes the

process for doing so.  *See* Def. Mem. at 8.  But the provision does not speak to the situation that occurred in this case, where the Statement of Work had expired on December 31, 2017, and Defendant had paid the final Monthly Fee.

Plaintiff also relies on the Agreement's Termination Clause, which provides that when a party voluntarily terminates the Agreement on 90 days' notice, "all rights and responsibilities of the parties shall continue" during that period, "including the provision of Services by Agency and Sherwin-Williams' payment to Agency of the Monthly Fee, as defined below, applicable during the Notice Period."  Agreement ¶ 2(a).  Plaintiff argues that Defendant constructively terminated the Agreement by ceasing to pay further fees and declining to enter into further Statements of Work.  Pl. Opp. at 7–8.  Consequently, Plaintiff argues, Defendant breached the Agreement by not providing 90 days' notice, and not paying the Monthly Fees outlined in the expiring Statement of Work for that 90 day period.  *Id.*

That argument fails at two different steps.  First, there is no reason to think that Defendant's decision not to seek further Statements of Work in January 2018 constituted constructive termination of the Agreement.  Although structuring the process of entering into Statements of Work was a substantial portion of the Agreement, it is far from the totality of the Agreement.  The Agreement defines the parties' relationship in a wide variety of other ways, from confidentiality and intellectual property rules to the parties' agency relationship to a noncompetition clause.  *See, e,g.*, Agreement ¶¶ 1, 2(c), 5, 7, 9, 15, 16.  It was, therefore, entirely reasonable that the parties would not want to trigger termination of the entire Agreement whenever no Statement of Work was in force.  Indeed, the Termination Clause itself acknowledges that the Agreement's terms are not limited to services and payment, by providing that "all rights and responsibilities of the parties shall continue . . . *including* the provision of

8

Services by Agency and Sherwin-Williams' payment to Agency of the Monthly Fee." *Id.* ¶ 2(a) (emphasis added).

Second, even assuming Defendant's actions constituted a constructive termination, nothing in the Agreement requires payment during the 90 day termination period when no Statement of Work is in force. The language of the Termination Clause is directly to the contrary. It requires continued "provision of Services by Agency and Sherwin-Williams' payment to Agency of the Monthly Fee, as defined below, *applicable during the Notice Period*." *Id.* (emphasis added). If no Monthly Fee is applicable during the notice period, then this clause imposes no payment obligation on Defendant. Removing all doubt, the provision specifically refers to "the Monthly Fee, *as defined below*." *Id.* (emphasis added). To reiterate, the clarion definition of the Monthly Fee is a monthly installment of the Fee set out in a Statement of Work. It would be nonsensical for the Termination Clause to expressly refer to the definition of a Monthly Fee as a portion of the total Fee specified in a Statement of Work, if what was meant was the last applicable monthly payment even when the entirety of the Fee had been paid and no Statement of Work was in effect.

Finally, Plaintiff's interpretation would render meaningless a variety of other provisions in the Agreement. "Under Ohio law, a contract must be construed in its entirety and in a manner that does not leave any phrase meaningless or surplusage." *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 363 (6th Cir. 2014) (internal quotation marks and citation omitted). But the reading urged by Plaintiff would create inexplicable redundancies. For example, the Termination Clause provides that Defendant is entitled to terminate a particular Statement of Work on 60 days' notice, and must continue paying the Monthly Fee until the 60 days has expired. Agreement ¶ 2(a). Suppose Defendant had invoked that provision at some point during

2017, when only one Statement of Work was in effect. Pursuant to the provision's terms, Defendant would be required to pay the applicable Monthly Fee during the 60-day notice period. But according to Plaintiff, unless Defendant promptly hired Plaintiff for another project, Defendant would also be required to continue paying that fee for some length of time beyond that notice period,[2] because not entering into a new Statement of Work would be tantamount to termination of the Agreement. This would render the 60-day notice provision pointless whenever a single Statement of Work was in effect, as was the case in 2017, and when the parties first entered into the Agreement. *See* Whereas Clause; *cf. Cincinnati Ins. Co. v. ACE INA Holdings, Inc.*, 886 N.E.2d 876, 883 (Ohio Ct. App. 2007) (holding parties' "course of performance in carrying out [their contract] is instructive on the contracting parties' intent"). There would be no purpose to a provision requiring Defendant to continue paying the applicable Monthly Fee for 60 days before a Statement of Work was terminated, if Defendant was also required to pay the same Monthly Fee for 90 days *after* the Statement of Work was terminated.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 31, and to close the case.

SO ORDERED.

Dated: February 7, 2020
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[2] The question of how long after would create its own interpretive conundrum. Did the constructive termination occur when Defendant gave 60 days' notice that it wished to terminate the Statement of Work, in which case Defendant would owe an extra month's payment? Or did it occur when the Statement of Work expired and no new one was entered into, in which case Defendant would be required to pay an additional three months of payments?